ROBERT K. DIXON (SBN: 262252)
rdixon@sandersroberts.com
SANDERS ROBERTS LLP
101 W. Broadway, Suite 1105
San Diego, California 92101
Telephone: (619) 398-4800 ext. 1
Facsimile: (213) 234-4581

STEVEN A. ZALESIN (admitted pro hac vice)
sazalesin@pbwt.com
Jane Metcalf (admitted pro hac vice)
jmetcalf@pbwt.com
Jenna Smith (admitted pro hac vice)
jsmith@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2000
Facsimile: (212) 336-2444

Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE MORRISON on behalf of herself, all others similarly situated, and the general public,<br><br>                  Plaintiff,<br><br>   v.<br><br>JOHNSON & JOHNSON CONSUMER INC.,<br><br>                 Defendant. | Case No.: 3:22-CV-01276-L-RBB<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>Judge: Hon. M. James Lorenz<br><br>Hearing Date: December 5, 2022<br>Hearing Time: 10:30 AM<br>Courtroom: 5B |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO PLAINTIFF AND PLAINTIFF'S ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT** on Monday, December 5, 2022 at 10:30AM, or as soon thereafter as counsel may be heard, in the United States District Court for the Southern District of California, located at 221 West Broadway, Courtroom 5B, San Diego, CA 92101, before the Honorable M. James Lorenz, Defendant Johnson & Johnson Consumer Inc., will and hereby does move this Court for an order dismissing Plaintiff's Complaint in its entirety and with prejudice.

This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and is based on the following grounds: (1) Plaintiff's claims are expressly preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*, because Plaintiff seeks to impose labeling requirements for the Tylenol Extra Strength product at issue that are not identical to federal requirements, (2) Plaintiff lacks standing to assert claims based on any representations made outside the product's label, and (3) Plaintiff lacks standing to assert claims for injunctive relief.

The Motion is based on this Notice of Motion and Motion to Dismiss, the Memorandum of Law and accompanying declarations, the Complaint and all other pleadings on file in this matter, and upon such other written and oral argument as may be presented to the Court.

DATE: November 3, 2022          PATTERSON BELKNAP WEBB & TYLER LLP

*/s/ Steven A. Zalesin*

Steven A. Zalesin

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ....................................................... v

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

BACKGROUND ............................................................................................. 2

    **A.**    Plaintiff's Allegations ............................................................. 2

    **B.**    FDA and Congressional Action on OTC Drug Products ........................ 3

        **1.**    Congress Demands Uniformity in OTC Drug Labeling ................ 3

        **2.**    FDA Extensively Regulates Titanium Dioxide's Use and Labeling in OTC Drug Products .................................................. 4

        **3.**    FDA Extensively Regulates Product Labeling of OTC Drug Products That Contain Acetaminophen ........................................... 6

ARGUMENT ................................................................................................. 7

**I.**    PLAINTIFF'S CLAIMS ARE ALL EXPRESSLY PREEMPTED ................... 8

**II.**    AT BARE MINIMUM, PLAINTIFF LACKS STANDING TO PURSUE CERTAIN CLAIMS ................................................................................. 11

    A.    Plaintiff Has Not Stated Viable Claims Based on JJCI's Website ......... 11

    B.    Plaintiff Lacks Standing to Seek Injunctive Relief ................................. 13

CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bowling v. Johnson & Johnson*,
  65 F. Supp. 3d 371 (S.D.N.Y. 2014) .................................................... 10

*Brazil v. Dole Food Co., Inc.*,
  No. 12-cv-01831, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) .......... 12

*Carter v. Novartis Consumer Health, Inc.*,
  582 F. Supp. 2d 1271 (C.D. Cal. 2008) ............................................ 10, 12

*Eckler v. Neutrogena Corp.*,
  189 Cal. Rptr. 3d 339 (Ct. App. 2015) .................................................. 11

*Fagan v. Neutrogena Corp.*,
  No. 5:13-cv-01316-SVW-OP, 2014 WL 92255 (C.D. Cal. Jan. 8, 2014) ...... 9

*Gisvold v. Merck & Co., Inc.*,
  62 F. Supp. 3d 1198 (S.D. Cal. 2014) .................................................... 10

*In re Coca-Cola Prods. Mktg. & Sales Practice Litig. (No. II)*,
  No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021) .................. 13

*Kanter v. Warner-Lambert Co.*,
  99 Cal. App. 4th 780 (2002) ............................................................. 8, 11

*McFall v. Perrigo Co.*,
  No. 2:20-cv-07752-FLA (MRWx), 2021 WL 2327936
  (C.D. Cal. Apr. 15, 2021) .................................................................... 8, 9

*Melendez v. ONE Brands, LLC*,
  No. 18-cv-06650, 2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) .......... 12

*Mills v. Warner-Lambert Co.*,
  581 F. Supp. 2d 772 (E.D. Tex. 2008) ................................................... 11

*Stover v. Experian Holdings, Inc.*,
  978 F.3d 1082 (9th Cir. 2020) .............................................................. 13

*Williams v. Apple, Inc.*,
  449 F. Supp. 3d 892 (N.D. Cal. 2020) ................................................... 12

**Statutes**

21 U.S.C. § 352(e)(1)(A)(iii) ...................................................................... 10

21 U.S.C. § 379r ................................................................................... 4, 9

**Rules and Regulations**

21 C.F.R. § 100.1(c)(4) ............................................................................. 4

21 C.F.R. § 201.326 ................................................................................. 8

21 C.F.R. § 201.326(a)(1)(iii) .................................................................. 10

21 C.F.R. § 201.326(a)(1)(iv) .................................................................. 10

21 C.F.R. § 201.66(b)(2) ........................................................................... 6

21 C.F.R. § 201.66(b)(8) ........................................................................... 6

21 C.F.R. § 201.66(c)(8) ............................................................... 6, 10, 16

21 C.F.R. § 73.1575(b) ......................................................................... 5, 14

21 C.F.R. § 73.1575(d) ......................................................................... 5, 14

31 Fed. Reg. 1065 (Jan. 27, 1966) .............................................................. 4

37 Fed. Reg. 7820 (Apr. 20, 1972) ............................................................. 7

42 Fed. Reg. 35346 (Jul. 8, 1977) .............................................................. 7

53 Fed. Reg. 46204 (Nov. 16, 1988) .......................................................... 7

63 Fed. Reg. 56789 (Oct. 23, 1998) ........................................................... 7

71 Fed. Reg. 3922 (Jan. 24, 2006) ............................................................. 8

74 Fed. Reg. 19385 (Apr. 29, 2009) ........................................................... 8

**Legislative Materials**

143 Cong. Rec. S8878-01 (Sept. 8, 1997) ................................................... 3

Sen. Rep. No. 105-43 (1997) ..................................................................... 3

## Other Authorities

Shauneen Miranda, *A Skittles lawsuit raises questions over titanium dioxide—a legal food additive*, Nat'l Pub. Radio (July 24, 2022), https://www.npr.org/2022/07/22/1112929301/skittleslawsuit-titanium dioxide .......5

U.S. Food & Drug Admin.,
*Inactive Ingredient Search for Approved Drug Products: Titanium Dioxide*, https://www.accessdata.fda.gov/scripts/cder/iig/index.cfm?event=BasicSearch.page ....................................................................................................................6

Wyatte Grantham-Philips, *Skittles was sued for containing titanium dioxide. Plenty of other products have it too*, USA Today (July 26, 2022), https://www.usatoday.com/story/money/food/2022/07/23/titanium-dioxide-food-skittles-lawsuithealth/10106708002/ ..........................................................................5

1

## STATEMENT OF ISSUES TO BE DECIDED

2      1.    Are Plaintiff's state-law claims, which seek to impose labeling
3 requirements that do not exist under the FDCA and applicable FDA regulations,
4 expressly preempted by the FDCA?

5      2.    Does Plaintiff have standing to assert claims based on representations
6 made outside the product label when she does not allege that she read or otherwise
7 relied on those representations?

8      3.    Does Plaintiff have standing to seek injunctive relief when she fails to
9 allege that she faces an imminent injury?

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION AND SUMMARY OF ARGUMENT

In this case, Plaintiff alleges that titanium dioxide, a color additive in Tylenol® Extra Strength ("TES"), may be harmful upon accumulation in the body.  Notably, Plaintiff does not allege that the TES she purchased caused her any physical injury, or failed to perform its intended functions—pain relief and fever reduction. Instead she asserts, based on a few publicly available studies, that the label should have warned of the risks allegedly associated with exposure to titanium dioxide.  Had the label disclosed this additional information, Plaintiff claims, she would not have purchased TES at the price she paid.  She asks this Court to mandate such a disclosure under California law, and prohibit Defendant Johnson & Johnson Consumer Inc. ("JJCI") from selling any titanium dioxide-containing products without this warning.

Plaintiff's contentions about titanium dioxide are dubious at best. But setting that aside, as a matter of law, Plaintiff is barred from pursuing her claims in this Court. Neither private plaintiffs nor courts are authorized to impose new requirements for the labeling of over-the-counter ("OTC") drug products.  That authority belongs exclusively to the U.S. Food and Drug Administration ("FDA"), which does not share Plaintiff's views.  On the contrary, two sets of FDA regulations—one governing OTC drug products containing acetaminophen, the active ingredient in TES, and another governing titanium dioxide in OTC drug products—permit the use of titanium dioxide as a safe color additive and do not require the warnings Plaintiff seeks.

Plaintiff's request that this Court apply state law to override FDA's considered judgment is squarely preempted.  The U.S. Food, Drug and Cosmetics Act ("FDCA") entrusts OTC drug product labeling exclusively to FDA, and expressly preempts any state-law requirement that is "not identical" to what FDA has mandated.  If Plaintiff disagrees with FDA, she may advocate changes before that agency.  But she may not

1   use state law to impose requirements for the labeling of OTC drug products that FDA

2   has not.  This Court should therefore dismiss Plaintiff's complaint with prejudice.

3                                    **BACKGROUND**

4        **A.     Plaintiff's Allegations**

5            Plaintiff Valerie Morrison, a California resident, alleges that she has purchased

6   TES,[1] a pain reliever and fever reducer whose active ingredient is acetaminophen, in

7   addition to other Tylenol-branded products, for personal use "since at least 2012."

8   Complaint ¶ 35.  TES is formulated with titanium dioxide, a color additive that, by

9   Plaintiff's own admission, FDA has approved as safe and effective for use in OTC

10  drug products.  *Id.* ¶¶ 11–12.  As Plaintiff does not dispute, the TES label discloses the

11  presence of titanium dioxide in accordance with FDA regulations.  Plaintiff does not

12  contest the accuracy of this disclosure.

13           Instead, Plaintiff's Complaint is premised on her disagreement with FDA that

14  titanium dioxide is a safe and effective color additive.  *Id.* ¶¶ 20–21.  Plaintiff alleges

15  that if she "knew the safety concerns associated with" titanium dioxide, she "would

16  not have purchased [TES] or would not have been willing to pay as much for it."  *Id.*

17  ¶¶ 40–41.

18           Plaintiff thus asks the Court to endorse her scientific analysis over FDA's, and

19  overrule that agency's designation of titanium dioxide as safe and effective.  She urges

20  the Court to set aside FDA's labeling regulations, by mandating under California law

21  that TES—and all products containing titanium dioxide—affirmatively disclose its

22  purported "risks."  In addition to claims under the UCL, FAL and CLRA, Plaintiff

23

24  _____

25  [1] Although Plaintiff attempts to take JJCI to task for alleged omissions in the labeling
    of "certain Tylenol products," including TES, Tylenol Cold and Flu, and Tylenol
26  Rapid Release Gels, her substantive allegations of reliance and injury relate to TES
27  alone. *See id.* ¶¶ 35–41.

28

asserts causes of action for breach of implied warranty, fraud, fraudulent inducement, fraudulent omission or concealment, and unjust enrichment.  *Id.*  ¶¶ 90–138.

### B.    FDA and Congressional Action on OTC Drug Products

Per Congress's express design, individual states lack authority to regulate the contents and labeling of OTC drug products.  Instead, that authority is committed exclusively to FDA, whose regulations preempt any "non-identical" state-law requirements.  FDA has approved titanium dioxide as a safe color additive for use in OTC drug products, and has not required the label disclosures that Plaintiff seeks— neither in titanium-dioxide-specific regulations, nor in regulations governing acetaminophen-based products such as TES.

### 1.    Congress Demands Uniformity in OTC Drug Labeling

A quarter-century ago, Congress determined that both consumers and manufacturers would benefit from federally uniform labeling standards for OTC drug products.  A congressional commission reviewed the "anarchic situation" resulting from 50 different state standards for labels of OTC drugs, and deemed national regulatory uniformity to be "a pretty logical" solution to that issue. 143 Cong. Rec. S8878-01, S8891, S8893 (Sept. 8, 1997) (statement of Sen. Jeffords); *see also* Sen. Rep. No. 105-43 (1997), at 63–64.  Congress thus entrusted FDA with exclusive authority to regulate OTC drug labeling.  Although the states would remain "free to publicize any information" that they wished, they would no longer be able to "force manufacturers to post [a] warning unless the FDA says they agree with it." 143 Cong. Rec. S8878-01, S8893.

Congress codified this principle of national uniformity in the Food and Drug Administration Modernization Act of 1997, which, among other things, expressly preempts all state requirements for OTC drug labeling that are not identical to FDA's. The relevant provision, entitled "National Uniformity for Nonprescription Drugs,"

provides that "no State or political subdivision of a State may establish or continue in effect any requirement" for the labeling of OTC drugs that is "*different from or in addition to, or that is otherwise not identical with*" federal requirements imposed by FDA.  21 U.S.C. § 379r (emphasis added).  As this expansive language reflects, and as subsequent regulations have confirmed, a state requirement need not actually conflict with a federal requirement to be preempted.  Rather, the federal statute preempts any state law that "directly or indirectly" imposes requirements that are "not imposed by or contained in the applicable [federal] provision (including any implementing regulation)," or that "[d]iffer from those specifically imposed by or contained in the applicable provision."  21 C.F.R. § 100.1(c)(4).  In short, the Modernization Act leaves states with no discretion or authority to establish new OTC drug labeling requirements.

Pursuant to the Modernization Act, FDA has promulgated labeling requirements not just for OTC drugs in general, but for acetaminophen specifically.   Per § 379r, individual states retain no discretion to supplement or displace FDA's requirements with their own.

## 2. FDA Extensively Regulates Titanium Dioxide's Use and Labeling in OTC Drug Products

As part of this comprehensive regulatory scheme, FDA has long recognized titanium dioxide as safe for use as a color additive in drug products.  FDA first deemed titanium dioxide "safe for use as a color additive in or on foods and drugs" in 1966, after scientific data established its safety.  31 Fed. Reg. 1065 (Jan. 27, 1966).  To this day, FDA maintains the same "safe" and certification-exempt status for titanium dioxide.[2]  *See* 21 C.F.R. § 73.1575(b) and (d) ("[t]he color additive titanium dioxide

_____

[2] FDA recently reiterated its view regarding titanium dioxide's safety to the national news media.  FDA told National Public Radio that "the agency continues to allow for

may be used for coloring ingested and externally applied drugs generally, in amounts consistent with good manufacturing practice" and "[c]ertification of this color additive is not necessary for the protection of the public health").

In a separate slate of regulations, FDA has specifically permitted the use of titanium dioxide as an inactive ingredient—*i.e.*, an ingredient not "intended to furnish pharmacological activity," 21 C.F.R. § 201.66(b)(2), (8)—in a variety of drugs. FDA's "Inactive Ingredient Database" reflects that titanium dioxide has been specifically approved for use in, among other things, coated tablets, delayed release tablets, and extended release tablets.  U.S. Food & Drug Admin., *Inactive Ingredient Search for Approved Drug Products: Titanium Dioxide*, https://www.accessdata.fda.gov/scripts/cder/iig/index.cfm?event=BasicSear ch.page.  FDA's endorsement of titanium dioxide's safety is thus unequivocal and long-standing.

Because FDA has never elected to require any such special disclosure regarding titanium dioxide, OTC drug products containing titanium dioxide must simply follow the general labeling guidelines for inactive ingredients.  Per 21 C.F.R. § 201.66(c)(8),

---

the safe use of titanium dioxide as a color additive in foods under certain conditions" and that "the available safety studies do not demonstrate safety concerns connected to the use of titanium dioxide as a color additive."  Shauneen Miranda, *A Skittles lawsuit raises questions over titanium dioxide—a legal food additive*, Nat'l Pub. Radio (July 24, 2022), https://www.npr.org/2022/07/22/1112929301/skittleslawsuit-titanium dioxide.  FDA likewise informed USA Today that the agency "maintains that the regulated use of titanium dioxide, specifically as a color additive in food, is safe under some restrictions" and "in all post-approvals for food additives, 'our scientists continue to review relevant new information to determine whether there are safety questions and whether the use of such substance is no longer safe under the Federal Food, Drug, and Cosmetic Act.'"  Wyatte Grantham-Philips, *Skittles was sued for containing titanium dioxide. Plenty of other products have it too*, USA Today (July 26, 2022), https://www.usatoday.com/story/money/food/2022/07/2 3/titanium-dioxide-food-skittles-lawsuithealth/10106708002/.

all OTC drug products must "list[] the established name of each inactive ingredient" in the "Inactive ingredients" section of the "Drug Facts" label.

### 3.    FDA Extensively Regulates Product Labeling of OTC Drug Products That Contain Acetaminophen

FDA has also long regulated the labeling disclosures of OTC drug products containing acetaminophen, but has never required detailed titanium dioxide warnings. In 1977, FDA published a proposed rule, entitled Internal Analgesic, Antipyretic, and Antirheumatic ("IAAA") Drug Products for Over-the-Counter Human Use, that included acetaminophen, *see* 42 Fed. Reg. 35346 (Jul. 8, 1977)—an "effective analgesic," 37 Fed. Reg. 7820 (Apr. 20, 1972). This proposed rule—sometimes referred to as a "Monograph"— reflected the recommendations of an FDA Advisory Review Panel as to specific composition, testing and labeling requirements.  42 Fed. Reg. 35346 (Jul. 8, 1977).

FDA then issued, in 1988, a Tentative Final Monograph for Internal Analgesic, Antipyretic, and Antirheumatic Products ("TFM").  Cognizant of the delicate balance between informing consumers and needlessly confusing them, FDA adopted some of the Panel's suggested label warnings while rejecting others.  *See* 53 Fed. Reg. 46204, 46248 (Nov. 16, 1988).  For example, FDA "tentatively decided not to adopt [the liver-damage] warning recommended by the Panel" even though the FDA was "aware that liver damage can occur from acetaminophen overdosage."  *Id.* at 46214.  Instead, FDA opted to require a modified warning, alerting consumers "that prompt medical attention is essential to the proper management of acetaminophen overdose."  *Id.* at 46215.  In 1998, FDA published a final rule that was substantially identical to the TFM, save for an evidence-backed alcohol warning requirement for acetaminophen products and nonsteroidal anti-inflammatory drugs.  63 Fed. Reg. 56789 (Oct. 23, 1998).

1    Although FDA revisited the relevant labeling requirements in 2006, and

2  officially expanded upon them in 2009—codified at 21 C.F.R. § 201.326 (the "Organ-

3  Specific Warning Rule")—it imposed no new requirements for the labeling of titanium

4  dioxide.   *See* Organ-Specific Warnings; Internal Analgesic, Antipyretic, and

5  Antirheumatic Drug Products for Over-the-Counter Human Use; Final Monograph, 74

6  Fed. Reg. 19385 (Apr. 29, 2009).   FDA's review of the scientific literature prompted

7  the agency to add some new safety warnings, such as the liver damage warning it had

8  previously forgone.   *Id.* at 19386.   In choosing which warnings to mandate, FDA

9  balanced the need to inform consumers about possible side effects against the need to

10  keep drug labeling clear, straightforward and consistent with the well-established

11  safety profile of the products at issue.   *See id.* at 19397–19401; *see also* 71 Fed. Reg.

12  3922, 3935 (Jan. 24, 2006) (explaining, in the context of a prescription drug regulation

13  amendment, that "labeling that includes theoretical hazards not well-grounded in

14  scientific evidence can cause meaningful risk information to lose its significance," and

15  that "labeling that does not accurately portray a product's risks … discourag[es] safe

16  and effective use of approved products") (internal quotation and citation omitted)).

17    Accordingly, despite 45 years of in-depth regulation and rulemaking concerning

18  the labeling of acetaminophen products, FDA has never chosen to require any warning

19  concerning the use of titanium dioxide as a color additive or inactive ingredient.

20  **ARGUMENT**

21    Plaintiff's Complaint must be dismissed, in its entirety, because her claims seek

22  to impose requirements for OTC drug product labeling that are "not identical" to those

23  established by FDA.   They are therefore flatly preempted by the Modernization Act

24  and require dismissal with prejudice.

25    Plaintiff's claims also suffer from other defects.   To the extent the claims are

26  based on statements that JJCI made outside TES's product labeling, Plaintiff lacks

27

28

standing to assert them.  And insofar as Plaintiff purports to seek injunctive relief, she again lacks standing.  But the Court need not reach these subsidiary issues because all of Plaintiff's claims are expressly preempted.  The Complaint should be dismissed with prejudice.

## I.   PLAINTIFF'S CLAIMS ARE ALL EXPRESSLY PREEMPTED

Plaintiff asks this Court to impose labeling requirements under state law that FDA has not imposed.  The Modernization Act, which preempts state-law requirements for OTC drugs that are "different from or in addition to, or . . . otherwise not identical with" federal law, forbids this effort.  21 U.S.C. § 379r.  Any state-law claim that would "effectively require a manufacturer to include additional or different information" than FDA has required "is preempted."  *McFall v. Perrigo Co.*, No. 2:20-cv-07752-FLA (MRWx), 2021 WL 2327936, at *8 (C.D. Cal. Apr. 15, 2021) (quoting *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795 (2002)).

Plaintiff's claims violate these prescriptions in two ways.  First, her claims seek to apply a special disclosure requirement for titanium dioxide in acetaminophen products, when FDA's labeling scheme for those products contains no such requirement.  21 C.F.R. § 201.326(a)(1)(iii), (iv).  Second, Plaintiff's claims seek to apply requirements for the disclosure of titanium dioxide in OTC drug products that are not identical to those FDA has mandated under 21 C.F.R. § 201.66(c)(8).  That regulation simply provides that all OTC drug products must "list[] the established name of each inactive ingredient" in the "Inactive ingredients" section of the "Drug Facts" label.  *See also* 21 U.S.C. § 352(e)(1)(A)(iii) (an OTC drug is considered misbranded if it does not list the "established name of each inactive ingredient").  Plaintiff therefore urges this Court to adopt a new set of rules under California law, mandating safety warnings that FDA has repeatedly declined to require.  That effort to impose "additional or different" labeling requirements under state law is exactly

what the Modernization Act prohibits.  *McFall*, 2021 WL 2327936, at *8 (alterations omitted).

Although any "no[n]-identical" requirement is sufficient to trigger express preemption, Plaintiff's request here is also outright inconsistent with FDA regulations. FDA has deemed titanium dioxide safe, but Plaintiff asks the Court to find that it is not.  FDA has decided that the purported health risks of titanium dioxide do not warrant a label disclosure, but Plaintiff asks this Court to require one anyway.  This result would not only usurp FDA's prerogative to regulate drug product ingredients and labeling, but would invite inconsistent rulings from state to state.  If this Court were to require a safety warning under California law, a Florida state or federal court might require a different warning under Florida law, and an Illinois court could require still another under Illinois law.  The purpose of the Modernization Act is to avoid such an anarchic patchwork of inconsistent labeling rules.

For these reasons, courts have consistently rejected state-law claims, like Plaintiff's, that seek to leverage new scientific information to impose OTC drug product labeling requirements that FDA has never included in applicable regulations.[3] In *Carter v. Novartis Consumer Health, Inc.*, plaintiffs alleged that defendants misled consumers by "falsely advertising and marketing their over-the-counter cough and cold medications as safe and effective for children under the age of six," because various articles and clinical studies had determined that "OTC cough and cold

---

[3] In addition to injunctive relief, Plaintiff seeks monetary compensation for JJCI's purported violation of California law due to its "omission" of a titanium dioxide warning statement.  Courts have made clear that, regardless of the form of relief sought, any attempt to hold a defendant liable under state law for purported noncompliance with a labeling standard that differs from federal law is expressly preempted.  *See Fagan v. Neutrogena Corp.*, No. 5:13-cv-01316-SVW-OP, 2014 WL 92255, at *1 (C.D. Cal. Jan. 8, 2014) (state-law claims for damages are preempted by § 379r when they do not "parallel" federal requirements).

medicines 'do not work' and are dangerous to children under the age of six."  582 F. Supp. 2d 1271, 1276–77 (C.D. Cal. 2008).   No FDA regulation, including the monograph for OTC cough and cold medicines, however, precluded marketing these medicines to children under age six, or required any disclosure about safety or efficacy for such children.  *Id.* at 1282.  The court accordingly held that plaintiffs' claims were preempted by section 379r because they "impose[d] requirements that are different from or in addition to FDA requirements."  *Id.* at 1284–85.  Defendants' allegedly misleading statements were "based entirely upon FDA-approved labeling and advertising, [which] explain[ed] the conditions under which the FDA has determined that OTC cough and cold medicine will be safe and effective."  *Id.* at 1284.

Similarly, in *Bowling v. Johnson & Johnson*, plaintiffs claimed that the defendant had misled consumers by representing that a line of its mouthwashes "restores enamel" because "an overwhelming consensus of medical and dental experts conclude[d] that the loss of tooth enamel is permanent."  65 F. Supp. 3d 371, 373–74 (S.D.N.Y. 2014).  Like in *Carter*, the court rejected plaintiffs' claims as preempted by section 379r because "FDA ha[d] issued a monograph directly on point but declined [] to indicate" that the statement "Restores Enamel" is misleading and therefore prohibited.  *Id.* at 376.  The court reasoned that, "[i]f successful, this litigation would do exactly what Congress, in passing section 379r of the FDCA, sought to forbid: using state law causes of action to bootstrap labeling requirements that are 'not identical with' federal regulation."  *Id.*

This same principle has been found to bar state-law claims directed at a wide range of OTC drug products whose labels, plaintiffs claimed, were inaccurate despite FDA regulations that permitted them.  *See, e.g., Gisvold v. Merck & Co., Inc.*, 62 F. Supp. 3d 1198, 1203 (S.D. Cal. 2014) (plaintiff's state-law claim, which sought to require a disclosure about the efficacy of SPF 50+ sunscreen products, "plainly

1    add[ed] to and [wa]s not identical with" federal regulations); *Eckler v. Neutrogena*

2    *Corp.*, 189 Cal. Rptr. 3d 339, 360 (Ct. App. 2015) (reaching the same conclusion about

3    the same disputed labeling claim as in *Gisvold* and thus avoiding "precisely the type

4    of scientific inquiry and policy balancing that is within the expert agency's proper

5    purview"); *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 776, 787–89 (E.D. Tex.

6    2008) (plaintiff's state-law claims, which alleged that defendant's OTC drug product

7    "amount[ed] to snake oil" and thus its labeling falsely represented that the product

8    killed lice, were expressly preempted because such statements were permissible under

9    the applicable FDA monograph); *Kanter*, 99 Cal. App. 4th at 797 (same).

10       Like the plaintiffs in each case cited above, Plaintiff here claims that JJCI falsely

11   advertised "through omission that Tylenol is safe when used as directed, while failing

12   to disclose that consuming one of its ingredients, [titanium dioxide], can have

13   detrimental health consequences," Complaint ¶ 32. and seeks to impose labeling

14   requirements under state law that FDA has not imposed.  This Court should dismiss

15   Plaintiff's claims as expressly preempted.

16   **II.   AT BARE MINIMUM, PLAINTIFF LACKS STANDING TO PURSUE**
17   **CERTAIN CLAIMS**

18       **A.   Plaintiff Has Not Stated Viable Claims Based on JJCI's Website**

19       Although her principal claim is that TES's label did not adequately disclose the

20   alleged risks of titanium dioxide, Plaintiff also vaguely references a handful of generic

21   statements on JJCI's website about the Company's commitment to safe ingredients

22   (e.g., "Safety starts with ingredients," and "[E]verything we do is driven by the safety

23   of consumers . . ."). *See* Complaint ¶¶ 24–28.  While not pled explicitly, to the extent

24   claims based on those statements can be read into the Complaint, they should be

25   dismissed.

26

27

28

1   Plaintiff's claims about JJCI's website are preempted for the same reasons as

2   her allegations concerning TES's labeling. *See Carter*, 582 F. Supp. 2d at 1282

3   (section 379r(c)(2) "expands the universe of potentially preempted state law claims to

4   include those that require additional warnings in the advertising for nonprescription

5   drugs, and not only on the labeling"). Under federal law, titanium dioxide is a "*safe*

6   and effective" OTC drug product ingredient. *See, e.g.,* 21 C.F.R. § 73.1575(b) and (d).

7   Accordingly, the fact that TES contains titanium dioxide cannot render JJCI's claim

8   to use "safe ingredients" false or misleading.

9   In any event, Plaintiff lacks standing to pursue claims related to JJCI's website

10   because she does not allege that she ever read or relied upon the disputed language.

11   Absent such an allegation, Plaintiff cannot plausibly allege that the website caused her

12   injury, as she must to establish standing under both Article III and the consumer fraud

13   statutes on which her claims are based. *Brazil v. Dole Food Co., Inc.*, No. 12-cv-

14   01831, 2013 WL 5312418, at *8 (N.D. Cal. Sept. 23, 2013) (dismissing plaintiff's

15   California consumer fraud claims because he failed to allege that he "saw the allegedly

16   offending statements" and "relied on them in deciding to purchase [d]efendants'

17   products"); *Melendez v. ONE Brands, LLC*, No. 18-cv-06650, 2020 WL 1283793, at

18   *3 n.5 (E.D.N.Y. Mar. 16, 2020) (dismissing claims based on website representations

19   "given that no plaintiff . . .  saw or relied on them"); *Williams v. Apple, Inc.*, 449 F.

20   Supp. 3d 892, 914 (N.D. Cal. 2020) ("[A]ctual reliance is required to demonstrate

21   causation for purposes of Article III standing when [] plaintiffs assert that their injury

22   is the result of deceptive misrepresentations or omissions." (internal quotation and

23   citation omitted)). Plaintiff's throwaway references to JJCI's website cannot salvage

24   her deficient Complaint.

25

26

27

28

## B.   Plaintiff Lacks Standing to Seek Injunctive Relief

Any claim for injunctive relief also fails for lack of standing.  The Ninth Circuit has held that a plaintiff's "abstract interest in compliance with labeling requirements is insufficient, standing alone, to establish Article III standing."  *In re Coca-Cola Prods. Mktg. & Sales Practice Litig. (No. II)*, No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021) ("*Coca-Cola*").   Instead, a plaintiff must establish an "imminent injury" to have standing to obtain injunctive relief.  *Id.*

Plaintiff, like the plaintiffs in *Coca-Cola*, premises her claim of standing on a "substantive right to a marketplace free of fraud," Complaint ¶ 47.  But as the *Coca-Cola* court held, such an "abstract interest in compliance with labeling requirements" could be asserted by literally any plaintiff, and is thus insufficient to support a claim of standing.  Plaintiff is at no risk of being misled in the future by the labeling of TES, so she cannot seek an injunction against that labeling.  *See Coca-Cola*, 2021 WL 3878654, at *2; see also Stover v. Experian Holdings, Inc*., 978 F.3d 1082, 1087 (9th Cir. 2020).

Similarly, Plaintiff's allegation that she "would purchase Tylenol products in the future if she could trust that their labeling was not false or misleading," Complaint ¶ 46, fails to establish an imminent injury.  Plaintiff is now aware that TES contains titanium dioxide, and it is duly disclosed on its label, consistent with federal law, 21 C.F.R. § 201.66(c)(8). If Plaintiff is ever considering purchasing TES again and wishes to know whether it still contains titanium dioxide—a safe additive that worries Plaintiff but not FDA—that information is readily obtainable.  Thus, like the *Coca-Cola* plaintiffs, Plaintiff has no practical need for injunctive relief, and her mere academic interest in changing TES's label does not suffice.  *See* 2021 WL 3878654, at *2 (a desire for "truthfully label[ed] products, without more, is insufficient to

demonstrate that [plaintiffs] have suffered any particularized adverse effects"). Plaintiff's claim for injunctive relief is therefore deficient and must be dismissed.

## CONCLUSION

Plaintiff seeks to use California state law to impose OTC drug product labeling requirements that do not exist under federal law. For the reasons set forth above, JJCI respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: November 3, 2022

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

*/s/ Steven A. Zalesin*
Steven A. Zalesin (admitted pro hac vice)
sazalesin@pbwt.com
Jane Metcalf (admitted pro hac vice)
jmetcalf@pbwt.com
Jenna Smith (admitted pro hac vice)
jsmith@pbwt.com
1133 Avenue of the Americas,
New York, New York 10036
Telephone: (212) 336-2110
Facsimile: (212) 336-2111

ROBERT K. DIXON (SBN: 262252)
rdixon@sandersroberts.com
SANDERS ROBERTS LLP
101 W. Broadway, Suite 1105
San Diego, California 92101
Telephone: (619) 398-4800 ext. 1
Facsimile: (213) 234-4581

*Attorneys for Defendant*